Our next case is Phlipsi, Inc. v. Google, LLC, docket number 25-1010. We have a cross-appeal in this case. Counselor Richards, you have three minutes of rebuttal. Time reserved, is that correct? That is correct, Your Honor. May it please the Court, the final written decisions at issue in this appeal are critically flawed because they turn not on the arguments and evidence that Google presented, but on two unsupportable claim constructions and on the Board's own sua sponte obviousness theories. I recognize we sort of have a lot of material, I'd like to jump right into the outgoing patents to get started. The first error the Board made with the outgoing patents is taking up the combination of Bockhaus and Taylor et al. Petitioner Google presented that to the Board as a grounds that was contingent on a certain construction of the term switch. The particular construction was switch being interpreted as required to be a device separate from the PSTN, which is the Public Service Telephone Network. The Board didn't adopt that construction and that should have been the end of that ground. Nonetheless, the Board went on to take it up, and as a result continued to make still more errors based on that because it was effectively following a ground that no one had argued. The first error it made was with its factual support for finding a motivation to combine Bockhaus and Taylor. This is on Appendix 22, it's incredibly short. The Board said that there was a need in Bockhaus to take Taylor's PSTN interface and combine it with Bockhaus. The Board cites only three pieces of evidence for that factual finding. The piece of evidence number one is Appendix 356, but that's the attorney argument. Definitionally, it can't be evidence. The second piece of evidence is Appendix 807 through 808. That's paragraph 97 from Google's expert. But that declaration is two conclusory sentences saying that a person would have been motivated and then statements in the middle just about what Bockhaus is capable of. Again, it doesn't support the factual finding that the Board made. The third factual finding is at Appendix 1257. These are paragraphs four and eight from Taylor, an entirely different reference. And so Taylor necessarily doesn't say anything about there being a need in Bockhaus for a PSTN interface. So I want to take a step back real quick. This is a clean factual finding the Board made about motivation to combine. It cited only three pieces of evidence. That's all that's before the Court for review. None of them provide support for that factual finding. That is the definition of a lack of substantial evidence. And because there's no substantial evidence, that finding has to be reversed. We state that again. So the motivation to combine finding here, is the factual finding under this Court's precedence. The Board, and we have to take the Board at the reasons it said it gave for that factual finding, made the three citations I just mentioned. None of those three support the finding it made that there would be a motivation to combine because a person of ordinary skill in the art would read Bockhaus as having a need for a PSTN interface. So the Board's construction is purely based on facts. It's a factual construction. And the basis of review there is a substantial evidence. Yes. For the motivation to combine error. Right. What we also call in our brief, the need. The need for the PSTN. That is a factual finding. And the review standard is substantial evidence. And just the point I'm getting to is because the Board gave so little evidence, we can actually step through it one by one, and none of it supports their finding. Now, there is an alternate basis, and that's the claim construction issue that's attached to the outgoing patents. And that's with this construction of switch. Now, this was actually a very narrow dispute before the Board. The only dispute was, is the plain and ordinary meaning of switch broad enough to encompass the PSTN interface of Taylor? Now, the answer to that is no. And the reason we know that the answer is no is because Taylor itself identifies switches and its own PSTN interface as two different things. Right. These are non-litigation documents. I'll note that Google admitted in its own brief that it actually put Taylor into this case as an example of the state of the art. And so Taylor says, element 12, that's a switch. Element 52, that's a PSTN interface. Nonetheless. You don't dispute that Taylor's PSTN interface performs the three claim functions of a switch? No, we don't dispute about the functional part. Okay. But I think that is the error. And really, just to get to the heart of it, what happened here is the Board converted a structural term with a functional definition. Right. This is not a means plus function term. This is not 112.6. This is a structural term. And I'll note the Court has seen this almost exact situation before in the Xerox case. It's cited in our reply brief. But there the Court gave the analogy about a bicycle where it said, well, if you're trying to define a bicycle, a bicycle is a vehicle that a user can ride to get from place to place. But if you make the definition of a bicycle a vehicle that a user can ride to get from place to place, that doesn't make a bicycle a tractor. And that is essentially what has happened here. Right. The fact that the Board adopted this broad construction, an element in the communications network that facilitates connections between transmitters and receivers, yes, that is a function of a switch. But it's also a function of nearly every other part. What was the alternative function that you argued before the Board? So we didn't argue an alternative function. Before the Board, this was a very narrow. And there is no argument either in your brief, is there? No, there's not. And I would submit that is entirely consistent with what this Court has said. You need only construe a term sufficient to resolve the dispute. Here the dispute just happened to be very narrow. It was, is the term switch broad enough to encompass the PSTN interface? We have the Taylor reference, which, again, Google itself conceded is evidence of the state of the art. And it shows that a switch is not a PSTN interface. There's some irony here in that the Board itself actually cites paragraphs 4 and 8 from Taylor on Appendix 1257. And those are the two very paragraphs where in 4 it likens a switch to sort of the old telephone exchange. And in paragraph 8, it talks about a PSTN interface being the necessary component to be able to talk to the computer server. Right? So the Board is actually citing the portions of Taylor distinguishing these things. And yet came to a conclusion that if it adopted this very broad construction, they could in fact be the same thing. I submit, Your Honor, any one of those three errors we've talked about is a sufficient reason to reverse the Board's findings as to the outgoing call patents. Unless there are more questions, I would like to switch to the incoming call patents. Do you find it troubling that you offer no alternative construction? On that point, Your Honor, I think it's not. I would disagree that we didn't offer an alternative construction. Then show me where in your brief you have the alternative construction. Well, I think where we might be talking aside from each other is we absolutely did not set out like a four stakes, this is the definition of a switch. That's what I'm talking about. And so I want to be clear that I'm not trying to dodge your question. That is not there. But what I'm saying is the dispute here was narrow. It was only whether or not the PSTN interface was a switch. We put forth our argument. We didn't hide it. We said it's not. We pointed to the evidence of why it's not. And I would submit that's consistent with what this Court has advised lower courts, that they need not sort of wade into construing terms to a degree that doesn't matter to any dispute. We throughout have always argued that this should be the plain and ordinary meeting. Your Honor, if there are no other questions on that, I would like to switch to the incoming call. For the incoming call patents, there are two issues. The claim construction issue here is the more straightforward one. I'd like to take it first and just get it out of the way. There are two steps in all of the asserted claims of the incoming call patents that are on appeal. One is a receiving step where an incoming call is received. And the second is a transmitting step where pre-call information is transmitted that then allows the incoming call to be answered. The question before the Board was whether or not these steps had to be performed in order, whether the incoming call had to be received before pre-call information that allowed that call to be accepted could be transmitted. The Board found that it didn't. In doing so, it erred. Here's the antecedent basis for the incoming call, the thing that is being accepted in the transmission step that the pre-call allows to be accepted, comes from the receiving step. Now, when this Court has seen this before in cases like HITERA and YLAN, it is acknowledged that that type of antecedent basis relationship is deficient to require steps to be performed in order. I'll note there's additional support in the specification. You don't need it. The claim language itself is enough with the antecedent basis. But Figure 4A is the only example of this process, and it also shows that the receiving step has to happen before the transmission step. So for all those reasons, Your Honor, the Board's construction allowing those two steps to be flipped should be reversed as error. The second incoming call problem is similar to the motivation to combine issue with the outgoing patents. This is a motivation to modify Bockhouse. What happens in Bockhouse, by way of background, is paragraph 55 talks about the transmission of a phone call with a relationship message. And the Board found that a person of ordinary skill in the art would have been modified, motivated to modify Bockhouse to split off that relationship number and send it over an IP data channel instead of on the phone channel. Now, this is an argument that Google never made as a petitioner, and as a result, the Board really has no substantial evidence support for it. The only thing the Board pointed to was paragraph 55 in Bockhouse. But in doing so, I think the Board revealed that it actually misunderstood what Bockhouse teaches. The Board said, well, look at paragraph 55. It talks about displaying an unknown number. If we were to break off this relationship number and send it over a data channel, it might get there before the call, and then you could avoid displaying unknown number. The problem is the relationship number is not the number that you display to someone on the caller ID. That's the third-party number. That's something entirely different. And the Board wholly fails to explain why sending a relationship number over a data channel would result in unknown number not being displayed. And paragraph 55, which is the only evidence-based citation the Board gives for that particular factual finding, also doesn't explain it. Your Honors, unless you have another question, I'm happy to cede the five seconds I have left before my rebuttal time. Thank you, Counselor. Counselor Zielberger? May it please the Court, I'll start with the outgoing call patents. First, on the issue of whether the Board properly considered the Backhouse-Taylor combination at all, the very premise of Flip's argument that this was a conditional ground is simply not correct. What the petitions did was have statements characterizing the ground and explaining how if the claims were construed to be particularly narrow and not permit the switches within the PSTN to be considered, this ground would qualify. But that does not in any way suggest that if that narrowing construction wasn't adopted and the claims were read broadly to permit either scenario, that somehow the ground would not apply. Flip says that the Board applied a different construction, but that's not accurate. What the Board did was simply avoid the question of whether a switch can be within a PSTN by adopting the ground that applies either way. I think it's also worth noting that this result was actually led to by Flip. They argued against the anticipation grounds by saying that within a PSTN there's multiple switches, and they argued that our anticipation ground failed for that reason. And the Board said in its final decisions that the obviousness ground simply didn't have this issue, and that's why the Board turned to the obviousness grounds. Ultimately, however, the Board relied on the very same references, the same disclosures, and the same obviousness theories presented in our petition. Turning to the Board's rationale for combining Backhouse and Taylor, this was a straightforward application of KSR where the combination of familiar elements according to known methods is likely to be obvious when it yields no more than predictable results. Here, as the Board found in Appendix 21, Backhouse teaches using an SLS platform with a PSTN, and Taylor teaches a PSTN interface that allows communications between a PSTN and an external device. At Appendix 22, the Board observed how Backhouse doesn't expressly mention how it connects its SLS platform to the PSTN, and the Board found that a person of ordinary skill, for that reason, would have had reason to implement Backhouse's system using Taylor's PSTN interface to perform its very established function of facilitating a connection between an external device and a PSTN. The Board also relied on Google's expert, Dr. Lin, who explained how Backhouse recognizes there's multiple different communication networks that you can connect to, but Dr. Lin explained how PSTN was known to provide reliable communications, and for that reason, a person would be motivated to connect to the PSTN network. And I think it's important to recognize what it is that Flip is actually arguing. They beat this drum about how the Board found that Backhouse needs a PSTN network. I think it's very important to understand exactly what they're saying there. They're actually conceding, and they're using their concession as some sort of argument. They're saying, oh, no, we concede that Backhouse already has a PSTN interface. That's their point. They say it in their blue brief at 42. They said it below. They're essentially trying to say, oh, even though Backhouse doesn't expressly disclose a PSTN interface, we're going to say that it has to have one, and so for that reason, somehow, obviousness fails. But obviousness is looked at collectively. You look at the teachings of the primary reference and the secondary reference, and by conceding that Backhouse already has a PSTN interface, if that's the case, Backhouse is silent on that issue, as the Board said. It doesn't expressly say one or the other, but if they're conceding that it has a PSTN interface, that only makes the case for obviousness stronger, not weaker. So did the Board actually have to rely on Backhouse at all to support a claim? On the issue of a PSTN interface, the Board said that Backhouse was silent on whether it had a PSTN interface, and it relied on Taylor. At Appendix 90, I do want to note that the Board even recognized, they said Patton owner's argument that Backhouse discloses interacting with a PSTN strengthens Petitioner's position, demonstrating that a person of ordinary skill in the art, when considering Backhouse's and Taylor's teachings together, would have used a PSTN interface to ensure a connection with a PSTN. This is a very simple issue of how do you connect the external component to the PSTN. That's all the Board is addressing, and they turn to Taylor to say, look, this is well known in the art. There's a PSTN interface that handles that functionality. Turning to the issue of the Board's finding that a PSTN interface was a switch, Flip's sole argument below, and its sole substantive argument on appeal, is that Taylor labels another component as a switch. As the Board held at Appendix 17, and as this Court has found many times, mere labeling of components with different nomenclature does not make you outside the scope of the claims. And the Board's determination that a PSTN interface was a switch within the scope of the claims was well supported. The Board explained how, at Appendix 18, Taylor's PSTN interface qualified as a switch because, in the combination with Backhouse, it facilitates a connection between a server and a PSTN consistent with the examples of a switch in the specification of the patents. And the Board found, and it's not disputed by Flip, that the PSTN interface performs all of the claimed operations associated with the switch. Now Flip tries to turn this into a claim construction dispute, but they never explain what construction they think applies. They never explain why it is that a PSTN interface cannot map to a switch. And they don't dispute, as I said, that the PSTN interface performs all of the functions of the claims. As this Court has held, for example, in Vivid, this Court only resolves claim constructions to the extent necessary to resolve the dispute. And where we have the appellant not saying why it is that a PSTN interface is not a switch, besides the different nomenclature, there really is no claim construction dispute. I would note briefly that the Board's interpretation of a switch was well grounded in the intrinsic record. They cited the specification, for example, Appendix 224 and 226, where the specification is described broadly as connecting the handset to the incoming call and how an incoming call might be routed to a switch. Those are the very functions that the PSTN interface is for. I would also note that Philip's expert said in Appendix 2083, when asked for an example of a switch, he said it's a combination of hardware and software or hardware or software that's going to take an input and provide an output, which is even broader than how the Board interpreted a switch. If there are no further questions on the outgoing call patents, I'll turn to the incoming call patents, where we did have two alternatives, mappings to the claims, both of which were adopted by the Board, and so either of which would support affirmance. I'll start with the first way, which is the scenario where there's an incoming call from a third party that doesn't have a previously assigned relationship number. I think this is probably the most straightforward path to affirmance because it's a purely substantial evidence question. Here, I think it's important to recognize an undisputed finding by the Board, which was that Backhouse teaches that when a user receives a call from a third party, a relationship number is created by the server and sent to the user in an encoded message. Philip does not dispute that there is such an encoded message or that it qualifies as pre-call information. Their only dispute below was that this encoded message is sent over what they call a voice channel rather than a data channel. Now, we had an argument below that the encoded message itself is sent on a data channel, but we also had this alternative position that even if you say that Backhouse is not specific about whether it's a voice channel or a data channel, it would have at least been obvious to send an encoded message over a data channel. That's what the Board found at Appendix 139, that at the very least, a person of having ordinary skill would have had reason to use IP-based communications to transmit this information. The Board provided motivation for this modification. They explained how Backhouse specifically teaches, expressly teaches, that IP-based communication minimizes temporal delays in allocating and acquiring relationship numbers and how Backhouse expressly disclosures that such channels can be used in setting up relationship databases. Now, Flip argues that these disclosures, which are in Paragraph 73 of Backhouse, are unrelated to incoming calls. They say it's undisputed, but in fact, the Board found exactly to the contrary at Appendix 140. They explained how Backhouse teaches at Paragraph 73 that data channels can be used in providing SLS services in general and how Backhouse expressly teaches that such channels can be used in setting up relationship databases. And in fact, the Board found at Appendix 139 that Paragraph 73 was directed to the exact action that Paragraph 55 is directed to. With respect to the unknown caller issue, this was simply the Board rejecting Flip's expert's explanation. Flip's expert argued below that, well, by sending the relationship number too quickly because IP-based communication is faster, you might have bad user experiences. And here, the Board was explaining at Appendix 140, well, no, that's not right. In fact, it's the opposite. By sending it more quickly, you'll avoid having to sometimes display unknown caller, which is something that Backhouse recognizes at Paragraph 55 that was discussed earlier. Even if you reach the other issue, the claim construction issue, which is only relevant to the second way that we mapped to the claims, that claim construction is also supported by the record. Flip agrees that this Court has held and consistently holds that unless method steps are expressly requiring a particular order, this Court does not generally require the claimants to be read to require that order. Here, there is a transmitting step mentioning the pre-call information, but all that that claim requires is that the pre-call information be sent to the handset so the handset is capable of accepting the incoming call. The pre-call information isn't influenced in any way by the incoming call. It only requires that the pre-call information give the phone that capability. And so the pre-call information could come at any time. It could come early on. It could come just before the call. But the claim doesn't require anything. Now, to be sure, the specification does have an example where the pre-call information comes at this narrow window where the call has come to the switch but not yet to the user. But nothing in the specification goes to the level of not allowing other orderings of the steps. And as this Court, I think it's instructive in the Interactive Gift Express case, for example, that this Court decided on Bonk, where there the specification had embodiments that were in different orders, that were even disparaged. The specification described them as impractical and uneconomical, but since they didn't rise to the level of rendering alternative sequences inoperative or nullifying the effect of the disclosure, this Court found the steps not to require a particular order. Here the specification doesn't have anything. In fact, it's open-ended. It says that the examples are exemplary and explanatory only and not restrictive of the invention. Unless this Court has any questions, I'll return the rest of my time. Okay. Thank you, Counselor. You have three minutes. Thank you, Your Honor. I'll make my rebuttals brief. If I could actually continue the incoming call discussion we were just having. The first thing I'd like to touch on is the unknown caller. I heard my friend sort of downplay that as just a response to Flipp's expert, but what Flipp's expert explained is that if this phone message with the encoded message in Bockhaus is split apart, then it results in a bad experience for the user, and this is why an ordinary artisan wouldn't do it. If the message arrives before the call does, what's going to happen is the phone will ring. It'll say, you've got a call. You'll press it to answer it, but there will be no call there. That was what his testimony was about. The one and only response the Board had to that testimony was this unknown caller theory, which is not a theory Google came up, and that's why there is so little substantial evidence support for it. I agree with my friend that the Board pointed to paragraph 55 to provide support for this idea that splitting up the call this way would avoid the unknown caller problem, but paragraph 55 simply just doesn't say that. Paragraph 55, to the extent talks about an unknown caller, just says if the relationship number isn't recognized, it will display unknown caller. It doesn't say anything about how to fix it. It certainly doesn't suggest that splitting off one part of the encoded message from the call will fix it. I'll note to the example KSR was mentioned that we all know it's true that KSR has the statement in it about routine used items being obvious, but if you flip two more pages, KSR then goes on to explain you still have to have a purpose for making the combination, and that's what's missing here, right? And the Board told us the purpose was a need in Bauhaus. It gave us a very small list of factual evidentiary citations, and none of them supports that need. I'd like to point out everything I think I heard from my friend about the construction of switch would essentially endorse giving switch here a completely functional definition. Yet at the same time, I haven't heard any contention that switch is anything but a structural claim term that should have a structural definition, and I think that really is where the Board went wrong here. It talked about what a switch does and thought that was enough for a construction, and ironically, that's how we got in this position in the first place. The petitioner's original position was contingent on a structural definition of switch, but the Board ducked that question and instead adopted this broad functional definition instead, which sort of led to kind of this mess of Board decisions that are slightly different from what's in the petition that don't line up with the evidence. I submit to your honor, all of the Board's decisions here need to be reversed on obviousness, and unless there are questions, I'm happy to cede my time. We thank you for your arguments. We thank all the parties for their arguments this morning, and this court now rises in recess.